May it please the Court. Good morning, Justices, Attorney Johnson. My name is Nigel Smith and I represent the Appellant, Dennis Hageman, in this case. I'd like to reserve five minutes of my time for rebuttal if necessary. A few months ago, I heard that one of our U.S. Supreme Court Justices advised attorneys to keep their oral arguments brief and to the point. So I'm going to try to follow his advice. I'm sure you've all read the briefs, and you know the procedural history and why we're here. The basic question before this Court is, does the agricultural exemption of the Workers' Comp Act apply to this case and this particular fact pattern where Mr. Hageman was hired by the employer, Mr. Sherman, to drive a truck for him and was injured during the performance of his job, but the key distinguishing facts are he never actually set foot on the farm, and it's actually possible that none of the grain that Mr. Hageman hauled for Mr. Sherman was actually produced on that farm. The connection to the farm is tenuous at best. Do you, is it, is it important, let's say, for example, Mr. Sherman's grain was sitting at the elevator, grain elevator, off farm, and somehow it got there from the farm to the elevator, but not by your efforts of your client, because he said he never set foot on the farm, but yet he was hired to take grain from that elevator to, say, a barge terminal or river terminal. Would that make a difference? I don't think that's too important. I mean, maybe if all of the grain he was hauling definitely came from the Sherman farm, I think Mr. Sherman would have a better argument that that was farm work that Mr. Hageman was performing. But he was hired to be a truck driver, and there's no way of knowing where the, where each kernel of grain came from. But I don't think it's that important because of the sheer volume of the grain that was being hauled by Mr. Hageman. The fact that he's driving a truck in and of itself is not a critical factor, is it? I mean, harvesting, if you harvest grain, you've got to do something with it, transport it for marketing, correct? Yes. But I think that, well, the key distinction here is, or the important part of this case is he was driving a truck, which is covered by, I believe it's section 3 sub 3 of the Act under ultra-hazardous activities. It's Mr. Sherman's position that he was, that Mr. Sherman was basically a farmhand driving a truck for him hauling his grain. But he wasn't just hauling his grain. He was hauling grain from mainly the Mendota facility to other facilities and vice versa. The frustrating part about this case is the work Mr. Hageman was doing was, so little of it, if any, was actually tied to the farm. It's our position that Mr. Sherman was just section 3 of the Act. You raise a very interesting point. Is there a certain percentage that should be adopted? I mean, you know, there could be cases in which there is a percentage that's clearly not agricultural and there could be a percentage that's highly agricultural. So how do we determine that? I'm not sure there is a way to determine that. I mean, possibly getting records from the farm, seeing how much was actually produced, getting records. No, no. The determination, I think, is what is the percentage. We have this concept in the Act called enterprise, agricultural enterprise. It seems fairly ambiguous. It's not defined in the Act. Exactly. And to my knowledge, at least you in opposing counsel, haven't presented any cases that really define it, per se, have you? No, Your Honor, you're exactly right. Okay. So I think the question is, what is, and I believe the affidavit of Mr. Sherman was that he was saying this is incidental, this, under the Act, it's called carriage. This is incidental. So what is appropriate about, when does something become incidental and is incidental? Does that bring it under the enterprise exemption? And if it's not incidental, it becomes carriage? Well, one of the problems in this case, and this was discussed at the lower levels, was that there are no, there's no case law out there that defines, you know, what percentage is required, how much of your day is required. But we have to remember, this is not a farmhand who was sent on an errand to go move corn or grain from the farm. This was a man who had never worked on the farm. All he did was driving the truck. That's it. That's all he did. Well, if he was driving, if he was driving the truck and hauling the farmer's grain, you don't dispute that he'd fall under the agricultural exemption, do you? It depends on, if he was hauling only Mr. Sherman's grain, I would say definitely the small family farm exemption applies, and this is not a workers' camp case. Now, what do you do with a farmer who farms, but in addition to that, hires out his equipment and its operators to neighboring farmers for the hauling of their grain to the farmers who are working on the farm? Well, I guess you have to look at that as a borrowed employee, possibly, and again, look at the facts of the case. Well, as far as the farmer whose grain is being hauled, he certainly falls under the family farm exemption. There's no question about that. But what about the loaning employer, the other farmer who's loaning his employees and his equipment out to haul other people's grain? Is he engaged in farming enterprise any longer, or is he outside of it? I think you need, again, to look at the facts of the case and see what, you know, is it a farmhand who's working, hauling grain, or is it a guy who was just hired to be a truck driver? Back to this case, though, your position is, is that the carriage requirement applies to your client. Yes. And, of course, obligates Mr. Sherman to provide workers' compensation, correct? Yes. Okay. Assuming you prevail, is Mr. Sherman obligated under the act and the requirements of the carriage requirements to cover this particular employee? Well, there's a couple other questions. There's other issues that the Respondent could raise like causation or accident, but Well, how about under the statute itself? Is there a requirement of two or more employees? Well, that's what we need to find out. That's why this needs to be remanded back to the arbitrator for the proceedings. I'm just saying that the small family farm exemption does not apply, and the arbitrator was incorrect, and it should be remanded. We do need to find out more information like how many employees did he have? Is it called the small family farm exemption? That's what I call it. No. It's the agricultural enterprise exemption. Right. But it is for small family farms. That's Well, that's because of the 400 workday per quarter requirement. Right. Excluding the immediate family. I mean, these farms are not small any longer acreage-wise or production-wise. But you're right, Your Honor. That's just something that I call the small family farm. Probably just to keep it straight in my own head. How much was he paid? How much was he paid? Your Honor, I'm not sure on that. Is that important? It could be, but I don't think it is. Excuse me. How he was paid? About the hourly work? Yeah, I'm not sure how. I came in late on this case. Well, there's an affidavit. It's all in the affidavit by Mr. Sherman. I'm not sure what he was paid or how much he was paid. But I don't think that's important. I mean, maybe, well, I guess it could be if he was paid, like, you know, $5 a day to help out a friend. But this was his main source of income during that time. He was hired to be a truck driver. And he worked as a truck driver, driving from mill to mill for Mr. Sherman. Counsel, your last point is interesting. Driving from mill to mill. Are you saying that basically then the case turns on the fact that Hageman was not transporting grain from the family farm or to the family farm? Yes. That's exactly what I'm saying. Because I think if he was hauling grain from the Sherman family farm to the mill, then the exemption would apply. And we wouldn't even be here. But that's not the fact pattern we have. He never even set foot on the farm. I'm not sure he knows where the farm is. And that's the key distinguishing fact here in this case. So you're basically saying Mr. Sherman is running a trucking business? Yes. In the off season. When he wasn't doing the farming, he was doing the trucking. And he hired Mr. Hageman and he was injured while working as a trucker. So your interpretation of the statute is the phrase, or to anyone in their employ must necessarily relate to anyone in their employ for the purposes of farming, tillage of soil, stock raising, rent demise, or lease of land used for those purposes. Well, I guess we're not even looking at that language, as much as we are at the section 3 sub 3 requirement that anyone involved in carriage or trucking be covered. This is the exemption. But we don't think it applies. My question is, why doesn't it apply? And so I'm asking you about the disjunctive language, because it talks about it doesn't apply to any work, employment, or operations done, had, or conducted by farmers and others engaged in farming, tillage of soil, or stock raising, or those who rent demise or lease land for any such purposes, or to anyone in their employ. And I'll ask you the question again. The or to anyone in their employ, does that relate only to anyone who is in their employ, farming, tilling soil, raising stock, renting, demising, or leasing land for the purpose of farming, tillage of soil, or raising stock? Right. That's the way I read that. Anyone in their employ has to relate to someone who does one of those functions.  Doing those types of activities. I mean, our argument is pretty simple in the fact that he was not working on the farm. He's not a farmhand. He was a truck driver. And I was going to ask this question. What would be the result if my client were an accountant who worked for an accounting firm here in downtown Chicago whose only client was the farm? Would the agriculture exemption still apply? And I would say no, because you have to look at the type of work that's being performed, just as the case law does, and just as the legislature did in drafting the Act. They intended for certain types of work to be covered, such as trucking, mining, construction, certain beauty shops, warehouses, etc., and that's all found in Section 3, entitled Automatic Coverage. It's our position he should have been automatically covered because he was driving a truck. He really was not a farmhand. He did not work on the farm. So the – and why don't we get this argument straight? Sure. Your argument is it's the nature of the work being performed by the employee that determines coverage, not what the employer may otherwise be engaged in. Exactly. Because that – I'm glad you mentioned that, Your Honor, because that brings me to my next question, I guess. Can the trucker be hauling electric fences, which are used on a farm, or mining for lime, which is used on a farm? Or what if the farmer owned a meat locker and there's a butcher working there and he slices his hand off? I mean, just because the farmer owns – just because the owner of the trucking company hauling electric fences or mining for lime or the meat locker, just because he owns a farm, would he not be held liable? I think that's – I mean, those are kind of ridiculous examples, but I think it illustrates the point. And also, interestingly, is – You mean, would the exemption apply? Pardon me? Would he be held liable? Would the exemption apply under those activities, right? Right. I mean, the exemption would not apply. Because he's doing something like – Well, the question is – – mining construction or – The legal question is we're always – we're looking here at the exemption, okay? Right. Because it says fairly clearly in the Act, nothing in the foresaid applies to this agricultural enterprise. But it was not an agricultural enterprise. Well, that's kind of, I guess, what this Court is struggling with. Because we have no guidance from the legislature and we have a claim of incidentalism, okay? And yet you say it's the nature of the work. It's carriage work. This guy's carrying. Well, but aren't you engaged in carriage work when you load a semi out of your field and haul it to the elevator or down to the river? Well, that's related to your farm, though. Well, then the question isn't the nature of the work. It's the question of whether the exemption applies is the incidentalism of the nature of the work to the enterprise. It's – you have to struggle with it. But that seems to be what we're really asked here ultimately to determine. Right. And I suppose you're right on that, Your Honor. The question is how do you define what's incidental? Because if you did have a farmhand who just did some incidental hauling of grain from mill to mill, that would be an entirely different fact pattern. But Mr. Sherman – or strike that – Mr. Hickman is not a farmhand. He never – Is he an independent contractor? No, he's not. He was – I'm not sure exactly how he was paid, but as you know, the determination for whether someone's an independent contractor is control. And I think we've established in the Statement of Facts that, I mean – There has been no finding below as to any of those issues at this point. Right. We're on a motion to dismiss as a matter of law, correct? Yes. Okay. And there are other issues that they could bring up. They could bring up the fact that maybe he was. I want to back you up. So you're not saying it's the nature of the work being performed by the injured employee at the time he's injured. That's not the determining factor. It's what evidently is he hired to do on a generalized basis. I suppose that's more accurate, yes. Because you could have a farmhand who is hired to do farming work, but could be engaged in something other than farming at the time that he's injured, and the question becomes then, is he covered or isn't he covered? Exactly. Now, what do you do with the last disjunctive in the exemption? And these are all in the disjunctive. They're separated by ORs. OR to any work done on a farm or country place, no matter what kind of work or service is being done or rendered. What do you do with that? But he wasn't working on the farm, though. It had nothing to do with a Sherman farm. But if he had picked up grain from a neighboring farmer and been told to take it to the grain elevator, and he was injured while he was on the neighboring farmer's property, would the exemption apply to him? Not quite sure about that. Maybe it would. But in this fact pattern, I think it's clear. I'm sure I shouldn't use the word clear. So it's not only the quantity of work that he performs, it also has to be related to the place where he's injured. Right. And the thing I can't get past is, how could he be considered to be exempt from or, you know, fall into the Section 3 exemption when he never even worked on the farm? How can a trucker be considered a farmhand? You know, the only connection to the farm is that Mr. Sherman owned them both. He owned the farm. He owned the trucking company. It's a Section 19 exemption, right? Yes. Okay. You said 3 is carried. Or 3 sub-19. Oh, okay. 3 sub-19. I think that's right. I mean, an argument can be made that the people who are driving those 16 wheelers that are parked next to the combine are getting filled up with corn out in the farmer's field are actually doing farm work. Or is it trucking, though? Well, they're going to haul. They're going to be in carriage. But the fact of the matter is, they're parked out there in the field. They're following the combine, or the combine's following them, filling it up and loading it with corn, and they're taking it from the farmer's field to the grain elevator. I think in that case, we have a much better chance of the exemption applying. Counsel, your time is up. You'll have time for one more button. Okay. Counsel, please. May it please the Court. My name is Andrew Johnson. I'm the attorney for William Sherman, a family farmer, who is the respondent and defendant in this case. I'm going to try to be brief as well. I'd like to reserve just two minutes for rebuttal at the end. How do you get rebuttal? I'm sorry, then. I apologize, Your Honor. My first visit with all of you, I apologize for not understanding that procedure. What kind of motion was this, by the way, that got this dismissed? It was a 2619A1. Your Honor. 2619A1? Yes, Your Honor. And I've cited within both the original motion and within my brief the authority for allowing use of various sections of the Code of Civil Procedure. Well, there's no question you can use the Code of Civil Procedure to dismiss the action. But it looks more like a motion for summary judgment to me than a motion to dismiss. It was denominated a 2619A1 because of lack of subject matter jurisdiction, Your Honor. It probably could have been brought on the exact same grounds as a motion for summary judgment, but there's very little difference for purposes of the analysis here between summary judgment versus 2619A1 because both would be decided on the affidavits as the sole evidence, and the review would still be de novo either way. I could have filed it that way. I think you're correct if that's what you're aiming for. There's no question sometimes you can use either one. Because there was a 103B motion thrown in. Yes, Your Honor. But that was in the circuit court. So that's sort of a separate issue. The 103B, there were two different 2619A1 motions. The first one was before the commission, and it related to lack of subject matter jurisdiction by virtue of application of Section 3 sub 19 of the Workers' Comp Act. And that would be what's been bantered around as the small family farm exception, which doesn't mention family farms in any way, shape, or form. And that's one thing I wanted to sort of lead off with. I think the version that Your Honor was questioning about to some degree is the old version of this Act where it used to reference things that happened in a farm or a country place. That was replaced, and now it reads, nothing contained in this Act shall be construed to apply to any agricultural enterprise, much broader than farm or country place or farm or farming, including aquaculture, which would be well beyond what we traditionally think of as a farm. It would also include fisheries, employing less than 400 working days of agricultural or aquacultural labor per quarter during the preceding calendar year. There's no issue whatsoever that my client employed more than 400 working days of agricultural issue. There's no question that his farming operation fell within the scope limitations, even if you included all of the so-called trucking employees, all of whom were actually independent contractors. But is his trucking business an agricultural enterprise? It doesn't say to a corporation, a farming corporation, it says an agricultural enterprise. Can an individual be engaged in more than one enterprise? An individual can be engaged in more than one enterprise. However, I would point you to the Cates Seed case or the Cates Farms case, Weaver v. Cates Farms that I've discussed in the materials, because that's a good example of one place where an employee tried to make a distinction, unsuccessfully, between two different elements of a unified farming operation, agricultural enterprise, because that employee's attorney figured out early on that if this is all one enterprise, he was out of the box by virtue of the exemption. What they did in that case is tried to separate two different aspects of one agricultural enterprise into Cates Farms and Cates Seeds, where the seed was Pioneer Cored Seed being sold. The evidence in that case was that the Pioneer Cored Seed sales were done out of a building that was part of the farm, and the truck was used for both things. All right, you said part of the farm. Your opponent makes an argument that has some superficial logical appeal. Just because someone owns a farm, does the exemption apply irrespective of what they have the employees doing? Now, think about that. Well, there's some, the focus, and I believe there's a case cited in the materials, and I can't think of exactly which one it is off the top of my head to cite it for you, that specifically references the fact that the emphasis in analysis of this exemption is on the character of the agricultural enterprise and the business, not the work itself. The character of the agricultural enterprise. And that is what? What is the character of the agricultural enterprise? In this case, the character of the agricultural enterprise is a unified grain farming operation. Okay, so if you have somebody engaging in trucking deliveries who never sets foot on the farm, who never takes anything from the farm, who never delivers anything to the farm, what does that have to do with the agricultural enterprise? The movement of grain to market in the space between when it leaves the farmer's field and when it ends up on somebody's table or being eaten by livestock. But that doesn't apply here. The entire process of that. Which grain did this person driving the truck move from the Sherman farm? He didn't come on the farm and do it. There were other trucks, some of the same trucks, perhaps driven by different people, that moved it from the farm to the grain. One of the things that's kind of confusing about this case is that Mr. Hageman got hurt very shortly after he was hired. So he was never working for my client during the harvest season. If he had continued working there for a year, he may have been, come November, sitting in the fields waiting for his grain truck to get filled up with grain for it to go there. But the trucks that are owned and leased by my client are used one part of the year very intensely during the harvest season, in September, October, November, for taking the grain out of the field and to the... Taking it out of the field. Let me try it another way. What work did Hageman do for Sherman that had anything to do with the operation of the farm itself? Can you tell me that specifically? Certainly, Your Honor. The good analogy for this is... Tell me what work Hageman did that had anything to do with the direct operation of the Sherman farm. The use of a piece of equipment integral to the farming operation... But it wasn't being used on the farm, was it? Not that particular day, Your Honor. It would have been on a different day in the fall when the harvest was going on. This would have happened in May, Your Honor. But what facts do we have here that show Hageman had anything to do with the operation of the farm whatsoever? His work had anything to do with the farm itself? You have my client's affidavit, Your Honor, which references the fact that the trucking of grain both from my client's farm and for neighboring farmers and between grain was all part of a unified agricultural enterprise. That's a conclusion. He can sign an affidavit of facts, but the only thing that's taken as true is the facts that he states, not the conclusions that he draws. Whether he's engaged in one enterprise or two enterprises, the conclusion will be drawn from the facts. That's for the court to determine, not him. And what troubles me is he says in his affidavit that 20 to 25 percent of his business is the hauling of grain. Now, if 25 percent of your business is hauling grain, we don't know from this affidavit if that 20 to 25 percent that's hauling grain is all hauling other people's grain for fee or it's hauling his grain and other people's grain. We don't know that from this affidavit. Now, assume for a moment that 20 to 25 percent of the enterprise was hauling other people's grain or hauling grain from one elevator to another elevator, not hauling his own for fees to other people. Why would it be unreasonable to come to the conclusion that he's engaged in two enterprises? Because of the Hill case, Your Honor. Pardon? Because of the Hill case, Your Honor. If you read the Hill case, even under the more restrictive older version of this exemption, the use of, and that case involved the threshing machine, which now is what we do at the combine. It was doing what's called custom harvesting, where you go harvest your neighbor's crop. For cash. On the farm. And under the old version, his only enemy was on the farm. And you've got an exemption. Now, if I own a large combine and I custom farm for my neighbor, I don't think it's a quantum leap in logic that I'm engaged in an agricultural enterprise. I mean, I'm farming. Whether it's my own land or it's someone else's land, I'm combining. But if the only thing that I'm doing is hauling grain from one grain elevator to the other, why do you suggest that's an agricultural enterprise as opposed to just a trucking business? Because, Your Honor. Because it's grain? In large part, that certainly is a helpful fact in this case. It would be more muddied if it was a different product other than being the product that is exactly in my client's business name, of Sherman Grain Farms. They're a grain farm. The grain goes from the combine to the truck to the elevator, back and forth between elevators to barges, and then gets shipped off in transport. And an agricultural employee includes those employees who are moving that grain in the stream of commerce between the farm to the thing. And that's one of the reasons that it's important to focus on the fact that the language of the statute is agricultural enterprise. It's not a small farm. So your argument would be all of those truckers that you see on 8094 or out on 26 or on 20, who are hauling these huge trucks loaded with hogs or loaded with steers from the auction ring to the slaughterhouse, are all exempt from the Workers' Compensation Act because that's an agricultural enterprise. It depends. It depends on the nature of the enterprise of their employer. They're hauling livestock. No, Your Honor. But the enterprise of their employer. If you have a business that is a huge trucking company that owns 3,000 trucks and has 3,000 drivers, they're going to go over the 400 working days easily. If you have more than two drivers, you're going to fall under the carriage-by-land. We have a, but again, you're going to be exempt from the carriage-by-land provision if it does fall under the scope restriction. But that's, the key is the scope restriction of the 400 working days of it being a small, a small agricultural enterprise. Enterprise is much broader than farm. There are things that go on in agricultural enterprise, in agribusiness, that do not happen on the farm. So if you own a farm in Illinois, I mean, your analysis can be carried out to its logical extension, as long as you don't exceed the 400 work days, then you can have somebody hauling grain for you in surrounding Midwestern states who you never see, who never comes onto your property, because it's related to an agricultural enterprise, right? I believe an argument could be made for that point, Your Honor. That's a much more tenuous case than the case at hand, where the driver in question admitted in his affidavit that, I want to point out one thing that keeps getting argued here by Petitioner's counsel, that it's possible none of the grain was from Sherman Farms. Well, that's not what the affidavit says. What the affidavit says is that not all of the grain came from Sherman Farms. Much of the grain... Well, when does it become just a trucking, a side trucking business, in your opinion? Probably when you have more than two, two truckers, and that if you're hauling a product that is not the same product that you're... So as long as you're hauling grain, that ends the issue. I believe hauling grain is in and of itself an agricultural... Even though the grain has nothing to do with the farm in question. Because it doesn't have to, under the statute as it's written. The farm, whether or not it comes from your farm, is no longer in the statute. That amendment is agricultural enterprise,  and it's clear from the, you know, that references back in the horse and wagon days, carriage by land under subdivision 3 of paragraph B, in the strict literal meaning of that term, might require that include hauling of grain by team and wagon from farm to the elevator. Surely that's not within the legislative intention. And that's in the Uphoff decision from 1916 from the Supreme Court. You've got Justice Posner's statement in the federal case that I've cited, the name of which I'm drawing a blank on at this second, that references, in that case, that involved a gentleman getting hurt by a combine, who was the grain truck driver. Driving a grain truck is within the agricultural enterprise. Regardless of where you're driving it from, regardless of who's driving it, as long as you have grain in that truck, you're covered. You can sleep at night. There's no problems with that. If grain's your sole product... Now, if you're running a shipping company, trucking company, where you're hauling products of every single sort, let's go back to my livestock. The only thing you haul is livestock. What's that? You don't haul anything other than livestock. The only trucks you have are livestock, hauling trucks. I believe that would be covered as an agricultural enterprise, Your Honor. If you keep... Even though the trucking company doesn't own any farms, doesn't do anything but haul these animals from the auction ring to the slaughterhouse. Hauling livestock, if hauling agricultural products is your sole enterprise, I would say that's an agricultural enterprise. Okay, now let's get back to kind of get it closer here. The trucker, the person who owns the truck, does own a small acreage and raises a few cows. Yes, Your Honor. But he goes, as Justice Hoffman says, goes to the auction, livestock auction, buys, and then takes it through the process. I believe that's very clearly covered as part of your agricultural enterprise. If you're in the livestock business, buying, selling livestock, whether it makes it to your particular farm or not, if engaging in raising and selling and transporting livestock is the exclusive focus of your business, and you stay within that scope limitation, and remember, that's... I'm raising those cows to take to the local auction for my own consumption, but my entire day is going to the auction, buying and trucking to the processor. I would say also, once you're buying and selling those livestock, cattle, pigs, whatever... No matter the site. No matter the site. I don't think the site matters, because I think that's the difference between the old version that said work done in a farm or country place... Counselor, your time is up. Thank you. Thank you, Your Honor. Your Honor. Is there a difference between the guy who goes to the auction ring and buys some feeder pigs to take back to his farm to raise and hires a trucking company to haul, compared to the meatpacking company who puts in the first bid, the full-grown hogs, and then takes them to the slaughterhouse? I think there is. Is there a difference between the haulers? One being an agricultural enterprise and one not? I think if it's for your own farm, your own agricultural enterprise, your own consumption, whatever, it's all... What if you're hauling for the meatpacking company? Well, I think it's a different story. What are you? Are you a farmhand or are you a trucker? I think that's really the distinction. And clearly, Mr. Eggman was never a farmhand. Like I said, he doesn't even know where the farm is, probably. Maybe he does, but he never set foot on the farm, never worked on the farm. I think the danger here is if you accept the respondent's position, then I guess what I would advise every truck driver to do is never haul any corn or pigs or cows or anything related to a farm because you're not going to be covered because it can always go back to that agricultural exemption or enterprise. And I still think that's the intention of the Act. And interestingly, there was the 1924 Peterson case involving the sawmill. And that's the only part of my brief I put in bold italics underlined because I really wanted to bring Your Honor's attention to that. It says, It certainly could not be contended that a man could own a large farm, operate a mine or a large manufacturing industry, and be exempted from the provisions of the Act because such business was conducted upon his farm. So here's a guy who was working in a sawmill operation on a farm, and still in that case the exemption did not apply. I think this case before you now is currently, currently before you is even further removed because our guy, our client, was never on the farm. He was injured while in the performance of his driving duties. Well, see, that gets back to definitional issues. That we apparently have a revision, and there's no legislative history that's recorded, as to where did this concept of agricultural enterprise, I mean, we could reason why aquaculture came in later because presumably it did not exist in the prior times when the Act was written. But we have agricultural enterprises thrown in. It leaves a question as to, is it just that they took away work done on a farm or country place? Is that what it's supplanted? Or is it a broader concept in today's reality than work just done on a farm? The way I read it... Or related to that particular situs, farm situs of the employer. The way I read the Act and all the case law was, I got the impression that the legislature was trying to protect the small family farm or smaller operations. Arguably the big debate is whether it's 500 workdays or 400 workdays in the quarter, et cetera, that sort of thing. I agree, that's the only thing that seems to stand out in a debate, a legislative debate, if there's anything recorded. But I don't think that's as important in this case as the fact, if you look at the work that my guy was doing, driving the truck between one mill and the other. How about the failure to comply with the notice requirements as asserted by your opponent? I think that would be another issue. That's not why the case was dismissed by the arbitrator. And if you remember, there was no testimony per se, it was just the affidavits of the two parties. And that's what the arbitrator ruled on. One last thing, if I may. I just want to say, the question that leaps to the forefront of my mind is, why are there no farm exemption cases that involve driving a truck? You know, I looked for them, I couldn't find them. The judge in the circuit court, he couldn't find them. Mr. Johnson couldn't find them. I think it's because they don't exist, because when you're driving a truck for hire, you're covered by Section 3. And I think that's what we have here in front of us. I just don't see how someone could be – I mean, I think this would be the first case where the farm exemption applied to someone who never set foot on the farm. I think that really would be the first case where that happened. How many employees would 400 work days per quarter need? I think – I did the math one time, it was like six or seven. Six or seven full-time employees? Exactly. But, again, I don't think that's as important as the fact that Mr. Hagman was driving the truck off the farm. Thank you, counsel. Never set foot on the farm.